Morris BLEVINS, Plaintiff,

v.

GENERAL ELECTRIC COMPANY et al., Defendants.

Civ. A. No. 78–0150(A)(R).

United States District Court,
W. D. Virginia.

June 13, 1980.

---

S. Strother Smith, III, Abingdon, Va., for plaintiff.

William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for GE.

Frank N. Perkinson, Jr., Diana M. Perkinson, Roanoke, Va., for International Union of Electrical, Radio, and Machine Workers, AFL–CIO.

## MEMORANDUM OPINION AND ORDER

GLEN M. WILLIAMS, District Judge.

Plaintiff, Morris Blevins, a citizen of the State of Tennessee, brings this action against General Electric Company, a New York corporation, with its principal place of business there, and the Industrial Union of Electrical, Radio and Machine Workers, for claims arising out of plaintiff's discharge from General Electric's employ on August 27, 1976. In his claims against General Electric, plaintiff maintains that he was discharged without just cause in violation of General Electric's collective bargaining agreement with the union, that he was dis-

charged because he "asserted his rights as an employee including an active participation in the union," and that the discharge was based in part upon his filing a claim for workmen's compensation under the state workmen's compensation laws. Jurisdiction of the first of these claims is alleged pursuant to Title 29 U.S.C. § 185, the second Title 29, U.S.C. § 158(a), and the third Title 28 U.S.C. § 1332. Plaintiff also alleges a claim against the union for breach of its duty of fair representation with jurisdiction asserted pursuant to Title 28 U.S.C. § 1337. The union has moved to dismiss on several grounds including that the action is barred by the statute of limitations. General Electric has moved to dismiss for non-exhaustion of the procedures of the collective bargaining agreement and has submitted that agreement and other evidence establishing non-exhaustion.

■■■ Where a collective bargaining contract provides a procedure for the resolution of disputes an aggrieved employee may not sue in federal court under § 301(a) of the Labor Management Relations Act, Title 28 U.S.C. § 185(a), unless the contractual agreement procedures have been exhausted. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Cooper v. Johnson,* 590 F.2d 559 (4th Cir. 1979). A narrow exception to this exhaustion requirement exists, however: ". . . [a] wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in handling of the employee's grievance." *Vaca v. Sipes, supra,* 386 U.S. at 185–186, 87 S.Ct. at 914. The union's duty to fairly represent is to "serve the interest of all members without hostility, discrimination, arbitrariness or capriciousness toward any. Although a union may exercise discretion representing employees, it must act with complete good faith and honesty." *Harrison v. United Transportation Union,* 530 F.2d 558, 561 (4th Cir. 1975), *cert. de-*

*nied,* 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976). A breach of this duty occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." *Vaca v. Sipes, supra,* 386 U.S. at 190, 87 S.Ct. at 916. *See also, International Brotherhood of Electrical Workers v. Foust,* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979). Referring to the union's duty, the court of appeals for this circuit stated in *Griffin v. International Union, United Automobile, A. & A. W. I.,* 469 F.2d 181 (4th Cir. 1972):

> A union must conform its behavior to each of these three separate standards. First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis of civil action.

*Id.* at 183. The court recognizes, however, that "[i]n the final analysis the right of an individual employee to have his grievance processed depends on the provision of the applicable collective bargaining agreement and the facts of each case." *Wyatt v. Interstate & Ocean Transport Co.,* 623 F.2d 888 (4th Cir. 1980).

■■ Ordinarily, an employee has no right to require that his grievance be submitted to arbitration. *Vaca v. Sipes, supra; Ostrofsky v. United Steel Workers of America,* 171 F.Supp. 782 (D.Md.1959), *aff'd,* 273 F.2d 614 (4th Cir. 1960), *cert. denied,* 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732. Extolling the virtues of this rule, the Supreme Court has stated:

> If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual

grievant to the vagaries of independent and unsystematic negotiations. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully. [Citations omitted]. It can well be doubted whether the parties to collective bargaining agreements would long continue to provide for detailed grievance and arbitration procedures of the kind encouraged by [the Labor Management Relations Act] if their power to settle the majority of grievances short of the costlier and more time consuming steps was limited by a rule permitting the grievant unilaterally to invoke arbitration.

*Vaca v. Sipes, supra*, 386 U.S. at 191–192, 87 S.Ct. at 917–918.

While an employee generally has no right to have the union submit his grievance to arbitration, as previously stated, the court must look to the provisions of the applicable collective bargaining agreement and to the facts of each case. Looking to the collective bargaining agreement between plaintiff's union and General Electric, it is clear that an employee has no right to require the union to submit a discharge grievance to arbitration, irrespective of the merits. According to Article XV, Subparagraph 1 of that agreement:

> Any grievance which remains unsettled after having been [otherwise] fully processed . . . and which involves . . a disciplinary penalty (including discharge) . . . may be submitted to arbitration upon written request of either the union or the company.

Pursuant to Subparagraph 6(a) of Article XV, arbitration exists "as a matter of right" concerning disciplinary action, including discharges. However, this is the right of the union to insist on arbitration in cases it determines to be meritorious and not the right of the employee. Subparagraph 5 of Article XV is unequivocal in that regard:

Individuals who are covered by this Agreement do not have the right to invoke the arbitration procedure on their own initiative. The arbitration procedure can only be invoked by the company on its behalf or the union on behalf of the employee.

As to whether the defendant union breached its duty of fair representation by not exercising its right to submit the matter to arbitration, only those facts which are undisputed or not properly controverted under Rule 56 will be considered. From the affidavit of Michael M. Smith, who, until March 1979, was Administrative Chief Steward of Local 161, International Union of Electrical, Radio and Machine Workers, AFL–CIO, it appears that the union filed a grievance on plaintiff's behalf on September 17, 1976, protesting his discharge. This grievance was processed through two steps at the local level and then to the third step at the National General Electric Conference Board in Albany, N. Y. General Electric's final position, however, dated January 31, 1977, was to the effect that termination of plaintiff was proper, and he was, accordingly, denied reemployment. Upon receipt of this position, the Grievance Committee of Local 161 met and reviewed plaintiff's grievance. Based on plaintiff's past work record, which involved significant absenteeism, and the fact that he had been repeatedly warned by defendant General Electric that he was subject to discharge for continued absences, the Committee voted not to recommend arbitration of the grievance. Before the Grievance Committee at the time of its decision was an attendance record which indicated that plaintiff was absent for personal illness from October 12, 1968, until November 4, 1968, was discharged on June 18, 1969, and reinstated on December 20, 1971, was absent for personal illness from April 27, 1973, until August 18, 1973, was absent for personal illness from January 25, 1974, until November 18, 1974, was absent for personal illness from February 7, 1975, until April 5, 1976, and was again absent for personal illness from May 7, 1976, until August 27 of that year.

Plaintiff seeks to avoid summary judgment by submitting affidavits so interspersed with inadmissible hearsay, conclusions, and unsupported accusations as to do substantial violence to the letter and spirit of Federal Rule of Civil Procedure 56. Subparagraph (e) of that rule states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." At best, the competent portions of plaintiff's affidavits controvert the accuracy of the records upon which the union based its decision not to take plaintiff's grievance to arbitration. As such, they fall far short of establishing that the union acted arbitrarily, discriminatorily, or in bad faith.

Even if the union's records were somewhat inaccurate, as the court will assume for purposes of defendant's summary judgment motion, "[l]iability for failure to represent . . . cannot be predicated upon simple negligence . . . ." Furthermore, the gist of the union's defense still remains intact: it did not press plaintiff's grievance to arbitration because it believed that plaintiff's high absenteeism would make its position untenable. It cannot be maintained, therefore, that the union's conduct toward plaintiff was arbitrary, discriminatory, or in bad faith. Accordingly, the union did not breach its duty of fair representation. There being no breach of this duty, the action against the union is without merit, and the action against General Electric for breach of the collective bargaining agreement must be dismissed for non-exhaustion of the contractual remedies of that agreement.

Plaintiff's remaining claim that he was discharged because he asserted his rights as an employee including active participation in the union, and that his discharge was based in part upon his filing of a claim for workmen's compensation under the state workmen's compensation laws must also be dismissed. The absence of jurisdiction in the district court of the first

of these is clear. *MacKenzie v. Local 624, International Union of Operating Engineers*, 472 F.Supp. 1025, 1032 (N.D.Miss. 1979); *Friends of Yosemite v. Frizzell*, 420 F.Supp. 390 (N.D.Cal.1976). As to the latter claim, the court finds no right of action based in tort under Virginia law for a discharge in retaliation for the filing of a workmen's compensation claim. While the court is aware that some courts have implied such actions under their respective state workmen's compensation statutes, *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978); *contra, Christy v. Petrus*, 365 Mo. 1187, 295 S.W.2d 122 (1956); *Dockery v. Lampart Table Co.*, 36 N.C.App. 293, 244 S.E.2d 272 (1978); *Loucks v. Star City Glass Co.*, 551 F.2d 745 (7th Cir. 1977); *Raley v. Darling Shop of Greenville*, 216 S.C. 536, 59 S.E.2d 148 (1950); *Stephens v. Justiss-Mears Oil Co.*, 300 So.2d 510 (La. App.1974), given the traditional circumspection exhibited by the Virginia Supreme Court in pronouncing policy, it is unlikely that that court would be willing to imply a cause of action where none has been spelled out by the legislature. *See generally, Counts v. Counts*, —— Va. ——, 266 S.E.2d 895 (1980). "As long as there is diversity jurisdiction, 'estimates' are necessarily often all that federal courts can make in ascertaining what the state court would rule to be its law." *Bernhardt v. Polygraphic Co. of America, Inc.*, 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1956) (Frankfurter, J., concurring). Making that estimation, the court finds that the Virginia Supreme Court would imply no cause of action under the Virginia Workmen's Compensation Act, Va. Code Ann. § 65.1–1 *et seq*, for retaliatory discharge, as none has been set forth by the General Assembly. Accordingly, judgment will also be entered for General Electric as to this claim.

Summary judgment for defendants.