## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Raymond L. Gray, Sr.

v.

Best Repair Co., Inc.

December 7, 1982

Case No. (Law) 13,547

By Judge Austin E. Owen

On October 13, 1982, the court heard argument of counsel upon the defendant's demurrer to the Motion for Judgment and took its ruling under advisement. On that same date, counsel for plaintiff filed a brief in opposition to the demurrer.

Count I of the Motion for Judgment undertakes to assert an action based upon § 65.1–37 of the Code of Virginia of 1950, as amended; and Count II undertakes to assert an action based upon §§ 18.2–499 and 18.2–500 of said Code. The demurrer contends that neither Count of the Motion for Judgment states a cause of action under the code section relied upon.

In his brief, as it relates to Count I, counsel for plaintiff relies most heavily upon the case of *Frampton v. Central Indiana Gas Company*, 260 Ind. 249, 297 N.E.2d 425, and his reference to decisions of the Supreme Court of Virginia stating the persuasiveness of the decisions of the Indiana Court.

It is certainly true that when adopted in 1918, the Virginia Workmen's Compensation Act was, practically speaking, a copy of the Indiana Act, and this fact led the Supreme Court of Virginia to hold that "the judicial construction placed upon the latter act in that state will be considered to have been adopted along with the act in this state." *Big Jack Overall Co. v. Bray*, 161 Va. 446 (1933); *Board of Supervisors v. Boaz*, 176 Va. 126 (1940).

Inasmuch as the *Frampton* decision relied upon by plaintiff was not rendered until 1973, some fifty-five years after Virginia adopted the Workmen's Compensation Act, its persuasiveness must be limited to the fact that the Virginia Act is based upon the Indiana Act and the logic of the decision itself.

In that regard, it should be noted that the *Frampton* decision does not purport to divine the legislative intent in employing the words "or other device" but rather is a clear, judicial creation of a new cause of action based upon the court's interpretation of the public policy of the State of Indiana.

"The basic common law rule is that, in the absence of some explicit contract to the contrary, every employment is an employment at will, and either the employer or the employee is free to terminate it at any time without notice. Reinforcing this basic rule is a special rule of mutuality of obligation: if the employee is free to quit at any time, then the employer must be free to dismiss at any time. From this it logically follows that unless the employee has agreed to serve for a specified period, the employer may, as one court said, discharge at any time 'for good cause, for no cause, or even for cause morally wrong, without being thereby guilty of a legal wrong.' [*Payne v. Western & Atl. R.R.*, 81 Tenn. 507 (1884)]." Quoted from *Individual Protection Against Unjust Dismissal: Time For A Statute*, 62 Virginia Law Review, 481, 484 (April 1976).

"This rule was not inherited from the English but was developed independently by American Scholars and Courts." *Id.* at 485.

"Courts sporadically have upheld suits by discharged employees on grounds of public policy, for example, when the discharge was for refusal to give perjured testimony, for filing a Workmen's Compensation claim, and for serving on a jury. More typically, courts refuse to recognize even these narrow limits on the employer's absolute right of discharge." *Id.* at 487.

As phrased by the Court in *Smith v. Atlas Off-Shore Boat Service, Inc.*, 653 F.2d 1057, 1062 (5th Cir. 1981), "Most of the cases recognizing a cause of action based on a discharge that offends public policy have grounded that action in tort, while a few decisions have relied on an implied contract theory of recovery. Whether grounded in tort or contract, the cause of action is based on the notion that the employer's conduct in discharging the employee constitutes an abuse of the employer's absolute right to terminate the employment

relationship when the employer utilizes that right to contravene an *established* public policy." (Emphasis mine.)

Let us look then at this question of "public policy," initially in its broad sense and then more narrowly as it relates to so-called retaliatory discharge of an at-will employee by his employer. As said by the Maryland Court in *Adler v. American Standard Corp.*, 432 A.2d 464, 472, 473 (1981): "We have always been aware, however, that recognition of an otherwise undeclared public policy as a basis for a judicial decision involves the application of a very nebulous concept to the facts of a given case and that *declaration of public policy is normally the function of the legislative branch.* (Emphasis mine.) . . . . As Mr. Justice Sutherland stated for the Supreme Court in *Patton v. United States*, 281 U.S. 276, 306, 50 S. Ct. 253, 261, 74 L. Ed. 854 (1930):

> "The truth is that the theory of public policy embodies a doctrine of vague and variable quality and, unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of a judicial determination, if at all, *only with the utmost circumspection.* The public policy of one generation may not, under changed circumstances, be the public policy of another."
>
> The *Adler* case stands for the proposition, stated on page 473, that ". . . Maryland does recognize a cause of action for abusive discharge by an employer of an at-will employee when the motivation for the discharge contravenes some clear mandate of public policy; . . . ." However, the court holds, at page 472, that allegations of retaliatory discharge for disclosure that the corporate employer treats capital expenditures as expenses; pays commercial bribes, falsifies sales and income data and alters commercial documents; misuses corporate funds for the personal benefit of its officers; manipulates inventory information, etc.; does "not provide a sufficient factual predicate for determining whether any declared mandate of public policy was violated."

In a 1956 decision in the case of *Christy v. Petrus*, 365 Mo. 1187, 295 S.W.2d 122, the Missouri Court, in attempting to determine the legislative intent behind the Workman's Compensation statute, remarked that the section under consideration was enacted along with

seventy-eight other sections that specified in minute detail the rights and liabilities of employees, employers, and insurers in relation to the vast industrial field encompassed in the statute. The court was, therefore, unwilling to believe that the legislature had made such careful provision for the rights and compensation of injured employees covered by the statute and, yet, would have omitted a specific provision for recovery of damages for wrongful discharge, if there had been any intent to create such a right.

In considering the "public policy" basis for decision, the North Carolina Court of Appeals, in the case of *Dockery v. Lampart Table Co.*, 244 S.E.2d 272, 274 (certiorari denied Supreme Court of North Carolina, July 14, 1978), noted with respect to the *Frampton* decision, *supra*, that the Indiana Court finding of a cause of action for "retaliatory discharge" cited no authority to support its novel proposition, only observing that there had been a parallel development in landlord-tenant law within that state. The North Carolina Court held: "We deem this claim based upon 'retaliatory discharge' not a claim upon which relief can be granted."

In *Green v. Amerada-Hess Corp.*, 612 F.2d 212 (5th Cir. 1980), the United States Circuit Court of Appeals for the Fifth Circuit said at page 214: "While the harshness of the terminable at will rule is subject to exception in light of express legislative action, the absence of explicit statutory provision of a civil remedy in the Mississippi Workmen's Compensation statute argues against recognizing a cause of action for retaliatory discharge."

Does the language of the Virginia statute permit a reasonable construction that would create a civil remedy for a "retaliatory discharge"; or does it clearly express a public policy, the violation of which should permit such an action? Section 65.1–37 of the Code of Virginia of 1950, as amended, and as in effect on January 5, 1982, the alleged date of discharge of plaintiff, reads as follows:

> Section 65.1–37. *Limitation of liability of employer.* — No contract or agreement, written or implied, and no rule, regulation or other device shall in any manner operate to relieve any employer in whole or in part of any obligation created by this Act, except as herein otherwise expressly provided.

Clearly, nothing is expressed in that section relating to any cause of action based upon an attempt by an employer to so avoid any obligation created by the Act. This writer cannot find any logical

construction of the legislative language that permits a finding of a right to bring a civil action. It would seem that even if one were to undertake to construe the act, as did the Indiana Court, to find a "retaliatory discharge" to be an "other device," it does not follow that such a construction thereby creates a civil action.

The civil action then, if it does exist in Virginia, must be based not on any "explicit statutory provision" but upon a finding that such a discharge contravenes some clear mandate of public policy.

Section 65.1–37 does *not* make the employer who enters into any such contract or agreement, or adopts any such rule, regulation or other device as therein mentioned, guilty of any crime; nor does it even declare any such contract, agreement, rule, regulation or other device void; but limits itself to providing that none of these shall *"operate* to relieve any employer . . . of any obligation created by this Act . . . ." From this I find no legislative expression of a clear mandate of public policy against the use of such an "other device."

Additionally, this Court construes the action of the legislature in adopting Code § 65.1–40.1, effective July 1, 1982, as an expression that the "Act," prior thereto, was not intended to provide a civil remedy for a retaliatory discharge. It would seem that § 65.1–40.1 does not follow the rationale of decisions, such as *Frampton* or *Adler, supra*, in that it does not create an action based either upon tort or contract. Rather, it prohibits such a discharge and permits the injured employee to file on the chancery side of the court for a restraining order and other appropriate relief, including damages, attorney's fees, and reinstatement.

Upon consideration of the authorities cited above and of the express provisions of Code § 65.1–37 and of the recent enactment of Code § 65.1–40.1, this court finds itself in agreement with the expressions of Judge Williams of the United States District Court for the Western District of Virginia, who, upon consideration of this same point in *Blevins v. General Electric Co.*, 491 F. Supp. 521, 525 (W.D. Va. 1980), said:

> given the traditional circumspection exhibited by the Virginia Supreme Court in pronouncing policy, it is unlikely that that court would be willing to imply a cause of action where none has been spelled out by the legislature.

The demurrer as to Count I is sustained.

In essence, Count II of the Motion for Judgment tracks the language of Code § 18.2–499, alleging that John McCloud and Homer H. Kinsey conspired for the purpose of willfully and maliciously preventing or hindering the plaintiff from doing a lawful act: that of applying for compensation under the "Act."

Assuming, without deciding, that the conspiracy as alleged would constitute a misdemeanor under Code § 18.2–499, no right to civil relief on account thereof is provided by Code § 18.2–500(a). The latter section provides in part (a) thereof for a suit at law by any person "who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2–499." The allegations of Count II do not allege an injury in the reputation, trade, business or profession of the plaintiff but, rather, an injury from wrongful termination of employment.

Plaintiff has not sought to bring this action within the provisions of part (b) of § 18.2–500, and the court need not, therefore, consider part (b).

The demurrer as to Count II is likewise sustained.