## CIRCUIT COURT OF THE CITY OF ROANOKE

Francis C. Laws

v.

Coleman-Bullington, Inc.

August 23, 1985

Case No. (Law) 84-0418

By JUDGE JACK B. COULTER

*Statement of Facts
and the Proceedings to Date*

Francis C. Laws has brought suit against his former employer, Coleman-Bullington, Inc., for $100,000 compensatory and $100,000 punitive damages on the grounds that he was wrongfully discharged on April 23, 1984, as an employee of the defendant's Tanglewood Holiday Inn. He had been hired on December 5, 1983, and claims under Count One of his Motion for Judgment that the defendant breached their contract of employment. He admits that this contract was for no specific duration, but charges that the defendant violated the Employee Handbook and other company policies relating to termination and discipline procedures by "summarily firing and discharging" him "in a manner inconsistent with the contract of employment." He further contends that the defendant breached the contract of employment by violating the implied covenant of good faith and fair dealing and by contravening the express provisions relating to termination set forth in the Employee Handbook. In particular, those provisions provided that an employee who had completed his probationary period:

> shall not be discharged without first having been given written notice. This protects employ-

ees from losing their jobs unfairly and insures
an opportunity to improve performance and/or
correct the problem.

Other provisions in the handbook upon which the plain-
tiff relies relate to the requirement to give warnings
if company regulations have been violated, the rule that
three warnings within a twelve-month period may be grounds
for discharge, and other provisions as to employee conduct,
discharge for cause, and disciplinary action.

The plaintiff further represents that he had not
violated any company rules justifying discharge and implies
that he had completed his probationary period and that
he was fired without notice or warning as required by
the handbook.

Under Count Two, Laws charges that his firing was
willful, malicious and intentional causing severe emotional
distress and that defendant's conduct was tortious and
wrongful. In addition Laws seeks punitive damages, prejudg-
ment interest from April 23, 1984, attorney's fees and
costs.

To this Motion for Judgment the defendant has demurred
to Count One on the grounds that no contract for specific
duration has been alleged and that the facts as claimed
constitute employment mutually terminable at will. As
to Count Two, the defendant re-asserts its position that
no duty owed the plaintiff has been breached, the employ-
ment being terminable at will, and that the conduct as
alleged was not so extreme or outrageous as to support
any action for the intentional infliction of emotional
distress.

After oral argument on the demurrer on March 6,
1985, the defendant's brief in its support, which had
been filed on March 4, 1985, was received by the Court;
the plaintiff submitted his Memorandum of Law in opposition
to the demurrer on April 8, 1985; and the defendant filed
a Supplemental Memorandum of Points and Authorities in
Support of the Demurrer on April 29, 1985.

*The Demurrer Concedes All Facts
Alleged, Implied or Inferred:
The Employer Should be Bound by His Own Commitments*

The demurrer, of course, as we all know, admits
the truth of all material facts that are properly plead-

ed. Justice Compton in the most recent Virginia decision on this growing controversy over the discharge of employees under so-called employment-at-will contracts, reminds us in *Bowman* v. *State Bank of Keysville*, 229 Va. 534 (Decided June 14, 1985),[1] of the scope of the admissions that a demurrer provokes:

> Under this rule, the facts admitted are: (1) facts expressly alleged, (2) facts which are by fair intendment impliedly alleged, and (3) facts which may be fairly and justly inferred from the facts alleged.

The plaintiff has charged under Count One, either expressly, by fair implication, or by logical inference, that the policies contained in the Employee Handbook were part of his contract of employment which, it is further alleged and not yet denied, the defendant "intended to apply." This being taken as fact, the contract of employment, though admittedly of no definite duration, is nonetheless made *not* terminable at will; the employee is given the express right, again not yet denied, that he will not be discharged without cause or written notice. Thus summarized, the plaintiff's basic contention is simplified.

The classic expression of the rule in Virginia is found in *Sea-Land Service, Inc.* v. *O'Neal*, 224 Va. 343, 349 (1982):

> where no specific time is fixed for the duration of employment, it is *presumed* to be an employment terminable at will, providing a dismissed employee no basis for recovery of damages against his erstwhile employer. *Hoffman Company v. Pelouze*, 158 Va. 586 (1932). *We said, however, that this presumption. . . is rebuttable.* (Emphasis added).

---

[1] This decision extends the exceptions to the terminable-at-will doctrine to include employees who are discharged in retaliation for failure to vote their stock as their bank directors desired. The at-will doctrine is also referred to as "the common-law rule," which is seriously doubted. See Blackstone's observation infra.

The quick and simple answer, then, to the defendant's demurrer is that the plaintiff has at least alleged sufficient facts to overcome this presumption of spontaneous and automatic termination under a contract where no duration of the employment is specified. It is the plaintiff's primary position that the duration of the employment is, in effect, specified: absent exigent circumstances, the employment continues until such time that he gives cause for discharge and then only after written notice.

## The Cases Considered

The case of *Norfolk Southern Railway Co.* v. *Harris*, 190 Va. 966 (1950), is persuasively in point. In that case the plaintiff's written contract of employment as a locomotive engineer with the railroad contained a provision that "Engineers will not be disciplined or dismissed from the service without a just cause." The Court rejected the employer's argument that because the plaintiff was not employed for any particular time his employment was terminable at the will of either party. In holding that the railroad was bound by the quoted provisions of the employment contract, the Court reasoned:

> By the contract the defendant agreed that it would not dismiss the plaintiff from service without a just cause. Defendant's theory amounts to an assertion that it could violate that agreement without penalty.
>
> It is settled doctrine in this State that where no specific time is fixed for the duration of an employment, there is a rebuttable presumption that it is an employment at will, terminable at any time by either party. (Citations omitted.)
>
> *Here, however, a definite time was fixed for the duration of the employment. It was, by the terms of the contract, to continue until the plaintiff gave to the defendant just cause to end it.* [Emphasis added].

The defendant's effort to distinguish this case from the facts at bar because "it involved a collective bargaining agreement which contained negotiated limitations on the employee's right to end the employment" is neither

persuasive nor logical. There may have been a collective bargaining agreement, but it is not mentioned in the ten pages of the Court's opinion. Even if it were, so what? As Justice Buchanan so eloquently pointed out, the doctrine of mutuality was inapplicable:

> The result of being discharged after long years of service in a particular occupation can well be serious. The defendant's agreement that it would not discharge plaintiff without just cause was a thing of value to him, a safeguard against the loss and embarrassment to be expected from an arbitrary discharge. . . . It was a promise in return for services which the plaintiff performed and which furnished sufficient consideration for a binding contract. In such case the doctrine of mutuality is inapplicable.

Furthermore, to suggest that *Harris* is not an employment-at-will case, as the defendant urges, is to miss the point entirely. It was not an employment-at-will, the Court decided, for the very reason, as in the case at bar, that:

> a definite time was fixed. . . It was, by the terms of the contract, to continue until the plaintiff gave the defendant just cause to end it.

The *Harris* decision is re-enforced by Judge MacKenzie's recent opinion in *Frazier* v. *Colonial Williamsburg Foundation*, 574 F. Supp. 318 (E.D. Va. 1983), in which the Court denied the employer's motion for summary judgment against the plaintiff employee who was claiming breach of contract and wrongful discharge from his employment. The Court held that there was a genuine issue of material fact with respect to whether the plaintiff had an enforceable oral promise from Colonial Williamsburg that it would not fire him without just cause. Relying on *Harris*, the Court declared it to be the law of Virginia that the presumption of "at will" employment is rebutted when the employer promises that the relationship will end only for a good cause and the employee relies upon that promise. The promise, Judge MacKenzie concluded, then becomes enforceable and the employment relationship is

no longer "at will," holding that the same general principle would apply whether the promise was written, as in *Harris*, or oral, as claimed by Frazier.

Of even more current application and even greater persuasion is Judge Jackson Kiser's complete and compelling opinion in *Barger v. General Electric*, 599 F. Supp. 1154 (W.D. Va. 1984), in which he denied the employer's motion for summary judgment because genuine issues of material fact existed as to whether provisions of an employee manual were part of the employment contract. The contest centered on the applicability of General Electric's Employees Handbook concerning rules and procedures in reducing the work force. The employee readily conceded that no contract existed which specifically fixed the duration of the employment. In a very scholarly and extensive analysis, even citing in footnote 7 this Court's opinion in *Barker v. Blue Cross, et al.*, Law No. 82-0587 (1984),[2] Judge Kiser distinguished those cases holding the terminable-at-will doctrine to be substantive law from those which merely create presumptions of intent. He concluded:

> But the at-will doctrine is not a substantive rule of law in Virginia. It is merely a presumption of the intent of the parties. As a presumption, it is rebuttable.

And being rebuttable, facts become at issue which cannot be resolved by summary judgment or demurrer.

This opinion by Judge Kiser is so thorough and excellent an analysis of the law on the subject that it is really dispositive of all the defendant's arguments. It should become a part of the plaintiff's arsenal of argument.

There are also numerous articles and commentaries on this general problem, including, in particular, the annotation *Modern Status of Rule That Employer May Discharge At-will Employee For Any Reason*, 12 A.L.R.4th 544 (1981) and Mallor, *Punitive Damages for Wrongful Discharge of At-will Employees*, 26 Wm. & Mary Law Rev. 449 (Spring 1985). See also the summary of articles listed in the footnote on p. 1441 of the recent *Bowman* case.

---

[2] This case has been printed above at p. 111. [Reporter's Note]

The history of the development of the American rule, its departure from the common law and its reliance on the "freedom of contract" notions and economic concepts of laissez faire of the early twentieth century, now in less repute, is of special interest in view of the defendant's urgings that the courts should not interfere in such labor-management affairs. Mallor in her article, for instance, observes:

> The American rule that employment of uncertain duration is terminable at will is in itself a relatively recent *judicial creation.* The traditional English rule, premised on a view of employment as a status-based relationship replete with customary rights and duties, presumed that employment of unspecified duration was for a term of one year and could not be terminated during that time without just cause or reasonable notice. (Emphasis added).

See 1 W. Blackstone, *Commentaries on the Law of England* 425-26 (5th ed. 1872):

> [I]f the hiring be general without any particular time limited, the law construes it to be a hiring for a year; upon a principle of natural equity, that the servant shall serve and the master maintain him, throughout all the revolutions of the respective seasons; as well when there is work to be done, as when there is not. . . and no master can put away his servant, or servant leave his master, after being so retained, either before or at the end of this term, without a quarter's warning; unless upon reasonable cause to be allowed by a justice of the peace; but they may part by consent, or make a special bargain.

### The Defendant's Authorities
### Analyzed and Distinguished

The several Virginia Supreme Court cases cited and relied upon by the defendant are clearly distinguishable from the case at bar, and none of these Supreme Court cases involved an employee handbook committing the employer

not to fire without cause or prior warning. *Stonega Coal & Coke Co. v. Louisville & Nashville Railroad Co.*, 106 Va. 223 (1906), involved a service contract whereby a railroad company agreed to haul the coal company's products and to deliver empty cars to it free of charge in exchange for the coal company opening and operating certain mines. But the contract was so incomplete that its intended duration could not be determined by fair inference and the Court held that it was terminable at will provided, it is interesting to note, reasonable notice of its intention to do so was given.

*Wards. Co., Inc.* v. *Lewis & Dobrow, Inc.*, 210 Va. 751 (1970), similarly involved the interpretation of a service contract, the main point decided being that a counter offer constitutes a rejection of the original offer. The counter offer to purchase certain advertising services was indefinite as to duration and the Court restated the rule:

> We have long held that a contract to furnish services or a contract of employment for an indefinite period is, upon reasonable notice, terminable at will by either party.

In *Plaskitt* v. *Black Diamond Trailer Co.*, 209 Va. 460 (1968), the defendant had employed the plaintiff as an exclusive sales agent for the sale of the defendant's trailers. The informal contract, which was based upon several letters, specified no time limit. The plaintiff contended that, as he had invested his time and expertise in developing customers within an exclusive territory, such business should not be taken away from him by the defendant undertaking its own sales. The Court, nonetheless, held that no substantial investment in facilities or inventory had been made by the plaintiff. In sustaining the defendant's demurrer the Court took pains to note that there was no question of overreaching or of one party taking unfair advantage of the other and quoted the general rule as found in 17 Am. Jur. 2d, *Contracts*, Section 486, pp. 956, 957, which included the following significant observation:

> generally, where the parties to a contract express no period for its duration *and none can be implied from the nature of the contract*

> *or from the circumstances surrounding them,*
> the only reasonable intention that can be imputed
> to the parties is that the contract may be
> terminated by either on giving reasonable notice
> of his intention to the other. (Emphasis added).

*Hoffman Specialty* v. *Pelouze*, 158 Va. 586 (1932), was a true employer-employee controversy in which the Court held that inasmuch as the contract called for an annual salary the employer could not terminate it at will; that it was a year-to-year hiring. But in *Title Insurance Company of Richmond* v. *Howell*, 158 Va. 713 (1932), the Court reasoned that paying the plaintiff "$708.34 a month" only fixed the rate of pay and did not establish a month-to-month employment.

In *Edwards Co.* v. *Diehl*, 160 Va. 587 (1933), a master of a fishing steamer thought he had been hired for the fishing season, but was fired on one day's notice. The Court, noting that there was nothing in the contract fixing the time for the continuance of the employment, held:

> A simple contract for hire is a contract at
> will and may be broken at election.

*Stulzman* v. *Nash & Son*, 189 Va. 438 (1949), was basically a trademark case in which the plaintiff brought an action for specific performance to require the defendant to continue distribution of its product. Here again, since nothing was said in their contract as to the time during which it should continue and there were no circumstances from which its duration could be determined, the Court held that either party was at liberty to terminate it at will on giving reasonable notice of the intention to do so.

In *Town of Vinton* v. *City of Roanoke*, 195 Va. 881 (1954), in which declaratory relief was sought, the Court held that an agreement made in 1914 by which the Vinton-Roanoke Water Company, whose rights had been taken over by the City of Roanoke, was to furnish water to the Town of Vinton at a certain rate was not a perpetual commitment, was a promise personal in character and not a covenant real, and was terminable at the will of either party. The Court reasoned that it lacked mutuality of promises since the Town had not been bound to take any amount of water.

Hence, these eight Virginia cases, most of which involve service contracts, give little guidance to the issue at bar.

### The Defendant's Argument
### Considered and Rejected

The major thrust of the defendant's argument is that the Employee Handbook should not be considered part of the employee's contract; that it should not convert an otherwise at-will employment into one of definite duration. But, as urged by the plaintiff, the Employee Handbook would not convert the terms of employment into any specific time frame, only one of ascertainable measure, presumably terminable upon cause, after warning and written notice.

What then is, or should be, the legal significance of the Employee Handbook? The Supreme Court of Virginia has not yet squarely addressed this issue head on. Courts from other jurisdictions have decided both ways.[3]

The defendant cites several Virginia federal and trial court decisions to support its position. In *Guttman v. Piedmont Aviation*, No. 79-0100(R), slip op., (W.D. Va. Aug. 21, 1979), *aff'd.* No. 79-1605, slip op., (4th Cir. May 23, 1980), the plaintiff claimed that her sick leave policy, which provided for a yearly increase in benefits, created a contractual right to year-to-year employment. But the sick leave policy by the very terms of its coverage was limited to regular fulltime employees and provided for increased benefits only for continuous service. The plaintiff admitted she was no longer a regular fulltime employee but rather insisted that the sick leave policy gave rise to a one-year contract for employment renewable at each anniversary date. The sick leave policy was silent as to how the employment might be terminated. Judge Dalton held that the sick leave policy simply could not be construed to transform an employment contract otherwise terminable at will into one with a year-to-year duration. But there was no Employee Handbook in this case in which

---

[3] For a listing of cases supporting the position that employee handbooks may rebut the terminable-at-will presumption, see the CLE publication, Advising Virginia Employers (1983) pp. I-13-16; cases holding to the contrary are listed at p. I-16.

the employer promised not to fire without warning or written notice.

In *Griffith* v. *Electrolux Corp.*, 454 F. Supp. 29 (E.D. Va. 1978), Judge Merhige merely applied the Virginia law that a contract for personal services which did not specify any term or duration of employment was terminable at will by either party upon a giving of reasonable notice. The plaintiff offered no extenuating circumstances but simply urged that the latest Virginia case then outstanding on the issue (*Plaskitt* v. *Black Diamond Trailer Co., supra.*) was at that time nearly ten years old and that, if the Virginia justices addressed the issue anew, they would apply the more modern rule set forth in Justice Gordon's separate opinion in *Plaskitt* to the effect that a contract for an indefinite term, such as the one there involved, should continue in effect for a reasonable time. Judge Merhige politely rejected such conjectural argument.

*Blevins* v. *Gen. Elec. Co.*, 491 F. Supp. 521 (W.D. Va. 1980), did not involve any contract of employment. The Court refused to create a cause of action for retaliatory discharge because an employee had exercised his rights under Virginia's Workmen's Compensation Act.

In *Gibson* v. *Nationwide Mutual Insurance Co.*, No. 79-0103(L), slip op. (W.D. Va.), the Court sustained the defendant's motion for summary judgment. The plaintiff claimed that the defendant in firing her had violated its "equity procedure" as contained in the company's handbook, which she had in her possession. She refused, however, to produce the handbook. Having failed to demonstrate that the claimed procedure was part of her alleged contract of employment, the Court had no alternative but to designate the employment as one terminable at will and to dismiss the case. Whether or not the company handbook, if it had been produced, would have been considered as part of the employment contract was not considered by the Court.

In *Fisher* v. *Southern Oxygen & Supply Co., Inc.*, No. 82-0912-R, slip op. (E.D. Va. Sept. 26, 1983), Judge Merhige was again called upon to anticipate state law, this time on whether an implied-in-law condition of good faith would be imposed by the Virginia courts on a contract of employment of unspecified duration and whether there would be created the legal duty not to discharge an employee in bad faith. On both counts Judge Merhige thought

that the Virginia Supreme Court would not accept either theory. He also sustained the defendant's motion for summary judgment on the plaintiff's charge that he had been slandered. On the other counts, however, the claims of age discrimination and the breach of the employment contract, summary judgment was denied.

Finally, the defendant relies on two circuit court opinions: *Ingram* v. *Double Envelope Corporation, et al.*, Law No. 83-0231, Circuit Court, City of Roanoke,[4] and *Quash* v. *General Electric*, Law No. LF-1578, Circuit Court, City of Richmond. In *Ingram* Judge Ballou sustained the defendant's demurrer under facts claimed to be similar to the case at bar although in that case the plaintiff's job had been abolished. His opinion letter of October 26, 1983, does not mention any employee handbook.

In *Quash* the three-paragraph order does indicate that the defendant's booklet "For Your Information" was considered by the Court in sustaining the defendant's demurrer, but neither the details of the booklet nor the reasoning of the Court has been made available. The amended motion for judgment indicated that the claim was based on the failure of the employer to give a timely re-engagement physical after the plaintiff had been injured in an automobile accident unrelated to his work.

In any event, these circuit court opinions of very able circuit court judges, even assuming complete similarity of the facts, are not binding on other circuit court judges. The fact that efforts to appeal them were denied, though perhaps giving greater weight to their judgments, does not foreclose consideration of the issue by other circuit court judges, for as observed in 1B Michie's Jurisprudence, *Appeal and Error*, § 143, p. 274:

> The refusal of a court to grant a writ of error in no manner indicates the view of the court on any question involving the merits of the case.

On these limited authorities, the defendant urges that employee handbooks and their like should not be considered part of any employment contract and though free to honor them, an employer should not be penalized

---

[4] This opinion has been printed above at p. 120. [Reporter's Note]

if he chooses not to. The defendant's argument may be summarized as follows: (1) such policy statements are unilateral; (2) they should not be used to shape contract principles to fit a particular perception of social evolution; (3) they should not be so manipulated as to create legally enforceable contract rights as it would give nonunion employees "the means of processing a myriad of routine daily employment grievances through the state courts"; (4) that to honor them might serve the employer's interest, but to dishonor them would "bring upon him a more rigorous and more expensive enforcement process than would be available to a union"; and (5) that to "embellish" these unilateral policies with legal fiction would be to declare "court-made substitutes for collectively bargained employment contracts."

These are strong and colorful expressions, beautifully put, but irrelevant to the issue. The law in Virginia is rather clear that where contracts of employment are silent as to the duration of the employment, they will be presumed to be terminable at will; but such presumption, it must be emphasized, may be rebutted by circumstances. It would create no legal fiction to suggest that circumstances which might rebut such presumption might well include the issuance of an employee handbook, a handbook that the employer did not have to prepare or distribute. And when such a manual purports to "Guarantee Fair Treatment," when it promises not to discharge an employee without first having given him written notice so that employees would be protected "from losing their jobs unfairly" and would be insured of "an opportunity to improve performance and/or correct any problem," then circumstances have been created, unilateral or no, for a jury to determine whether or not the at-will presumption has been rebutted.

The word of a responsible employer has been given--in writing--that such practices and procedures would be followed. It should not be made meaningless dribble by judicial fiat. To suggest that the employer may honor his word when it pleases, but dishonor it when it does not, does little to enhance the corporate image. We are, after all, a nation of honor, which should require no court decree to declare. Requiring management to respect its own pledge is not shaping contract principles to fit particular perceptions of social evolution; it is not manipulating circumstances so as to give nonunion

employees the means of submitting any and all grievances to the court; it is not imposing upon employers a more rigorous and more expensive enforcement process than would be available to a union; and it is not embellishing policies with fictions that create court-made substitutes for collectively bargained employment contracts. If such should be the result, it is not the concern of the moment. Abstract Labor Law is not the forum for this fight. Rather, respect for one's word, honoring one's commitment, holding one to his pledge--these are matters which warrant the "judicial interference" the defendant seeks to avoid. What some would call "judicial interference," others would consider the dispensation of justice. For without judicial "interference" our schools would still be segregated, the exclusionary rule limited to the federal courts, and indigents charged with crime would have no right to counsel.

The Michigan court in *Toussaint* v. *Blue Cross, etc.,* 292 N.W.2d (Mich. 1980), rang the clarion call on this issue in a case quite similar to the one at bar:

> While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly.

> \* \* \*

> Although Toussaint's employment was for an indefinite term, the jury could find that the relationship was not terminable at the will of Blue Cross. Blue Cross had established a company policy to discharge for just cause only, pursuant to certain procedures, had made that policy known to Toussaint, and thereby had committed itself to discharge him only for just cause in compliance with the procedures. *There were, thus, on this separate basis alone, special circumstances sufficient to*

*overcome the presumptive construction that the contract was terminable at will.* (Emphasis added.)

Other cases that have advanced this theory include *Jackson* v. *Minidoka Irrigation Dist.,* 563 P.2d 54 (Idaho 1977); *Hernandez* v. *Home Educ. Livelihood Program,* 645 P.2d 1381 (N.M. 1981); *Weiner* v. *McGraw-Hill, Inc.,* 443 N.E.2d 441 (N.Y. 1982). See also the cases cataloged in footnote 8 of Judge Kiser's opinion in *Barger* v. *General Electric Co., supra.*

As to Count One, therefore, the demurrer, for the reasons aforesaid, is overruled. The plaintiff should be permitted to hold management to its guaranty if such can be his proof.

The Court has purposely not resolved the arguments as to the implied covenant of good faith and fair dealing, it not being considered necessary at this time.

### As to Count Two, The Plaintiff's Charges, Being Conclusionary and Not Factual And Not in Keeping With The Principles of Womack, The Demurrer is Sustained

As to Count Two, however, the demurrer is sustained. The elements necessary to establish the tort of intentional or reckless infliction of emotional distress without physical impact are very narrowly defined and are clearly set forth in *Womack* v. *Eldridge,* 215 Va. 338 (1974). In *Womack* unsolicited photographs of the plaintiff were deceitfully obtained by the defendant upon her lie that she was a newspaper reporter doing an article on Skateland where the plaintiff was a coach. She was, in fact, an investigator for an attorney who was defending one Seifert on charges of sexually molesting two young boys. Counsel for Seifert used the photographs in his defense in an effort to have the boys identify someone other than his client. Such outrageous, malicious, wanton and deceitful acts would shock the conscience of the least reasonable of reasonable men. The Court, in a case of first impression, sustained the jury verdict setting forth the elements of the new tort being recognized:

We adopt the view that a cause of action will lie for emotional distress, unaccompanied by

physical injury, provided four elements are shown: One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a causal connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe.

It is conceivable that allegations could be framed by shrewd and skillful attorneys to accommodate the *Womack* test, but such result should not be accomplished by mere conclusionary accusations without specific detail. Paragraph 14 under Count Two of the plaintiff's Motion for Judgment is merely an accumulation of pungent and poignant phrases, conclusionary and argumentative, without factual substance. Furthermore, the second element of the *Womack* definition to the effect that the defendant's conduct in exercising what it presumably considered to be its corporate discretion was "outrageous and intolerable in that it offends against the generally accepted standards of decency and morality" is not included. The plaintiff's claim should not be weakened by such excessive and extravagant baggage. Count Two is accordingly eliminated by upholding the defendant's demurrer.