JAMES M. WILLARD v. P. T. HUFFMAN, INDIVIDUALLY AND P. T. HUFFMAN TRANSFER, INC.

(Filed 10 January, 1958.)

**1. Master and Servant § 6b—**

Evidence that plaintiff was discharged because of his activities in regard to joining a labor union *held* sufficient to be submitted to the jury in this action for wrongful discharge. G.S. 95-81.

**2. Same—**

An employer has the right to discharge an employee for any reason or no reason at all except in those instances in which the employee is protected from discharge by statute.

**3. Same—**

An employee is protected from discharge by G.S. 95-81 for membership or nonmembership in a labor union only if it is the sole reason for his discharge or is the motivating or moving cause of his discharge, and where there is evidence that plaintiff employee was discharged for breach of a company rule against drinking on the premises and also for such employee's activities in regard to joining a labor union, an instruction to the effect that the employer would be liable for wrongful discharge if the employee's activity in regard to joining a labor union was one of the reasons for his discharge, is reversible error.

APPEAL by defendants from *Rousseau, J.,* January Civil Term 1957 of GUILFORD (Greensboro Division).

This is a civil action instituted by the plaintiff to recover damages for his alleged wrongful discharge by the defendants in violation of G.S. 95-81.

The evidence tends to show that the plaintiff entered the employment of the defendant P.T. Huffman Transfer, Inc. in May 1955 and was discharged on 18 January 1956. Plaintiff testified that on 17 January 1956 the individual defendant, P. T. Huffman, had a meeting in his office with his drivers around 8:45 a.m. "He * * * said * * * he had heard there were some dissatisfied drivers and he would like to know if there was anything he could do to make us happy. * * * he had heard

from a friend that all of the drivers were over at my house last night, except two, and he wanted to know who the spokesman was. He had heard that we were discussing the Union. He * * * said he wished he could pay union wages but he couldn't, that he would have to close his business down before he could pay it. He asked if any of the men wanted to see his books. * * * and, he wanted to know if he had done anything wrong, anything we didn't like, or said anything." That when he was discharged on 18 January 1956, Mr. Huffman said, "Well, as bad as I hate to, I have got to let you go." That he inquired on what grounds, and he said, "You have violated a company rule * * * drinking on company premises."

This witness admitted that four days before he was fired he did drink some whiskey on the premises of the defendants, but denied any knowledge of a rule prohibiting such conduct.

The plaintiff's evidence further tends to show that a decision was made at the plaintiff's home to get in touch with a Mr. Jones, a representative of the union. However, there is no evidence in the record that the plaintiff or any other driver of the defendants actually joined the union.

The defendant Huffman denied he had said anything about a union in the meeting with the drivers; that he had no written contract of employment with the plaintiff. He testified that on 17 January 1956 he discussed with his drivers some rules about loading and unloading freight and that he could not pay any higher wages than he was then paying. That he was president and manager of the defendant corporation; that at the time of Willard's discharge the defendants were operating 16 or 17 trucks; that about ten per cent of their operation is interstate. That on 6 January 1956 a rule was promulgated to the effect that no employee of the company was permitted to drink on the company property at any time; that each driver employed by the company, including Mr. Willard, was personally informed of the rule.

The evidence tends to show that the plaintiff Willard, Walter McCormick and Charlie Foust, all drivers, and Jack Neal, rate clerk and assistant traffic manager of the company, participated in the drinking on 14 January 1956. According to the evidence of the defendant Huffman, he was informed that Willard, McCormick and Neal were drinking on the defendants' premises on 14 January 1956; that he discharged Willard and McCormick for that reason and for no other, and so informed them at the time of their discharge; that Neal was informed that any recurrence of his conduct would result in his discharge; that he was retained because it was brought to his attention that Neal was not present at the meeting when the rule was put into

effect; that the witness did not know that Foust had been drinking on the defendants' premises until after a witness so testified about an hour earlier.

Evidence was offered by the defendants that the company had frequently employed Union members and at the time of the trial had in its employ drivers who had been union members at other companies.

The jury by its verdict found that the plaintiff was discharged by the defendants "because he did not abstain or refrain from membership in a labor union or labor organization," and awarded damages in the sum of $625.00.

From the judgment entered on the verdict the defendants appeal, assigning error.

*Robert S. Cahoon, for plaintiff appellee.*
*Brooks, McLendon, Brim & Holderness, for defendants appellant.*

DENNY, J. The defendants assign as error the refusal of the court below to sustain their motion for judgment as of nonsuit made at the close of plaintiff's evidence and renewed at the close of all the evidence.

We think the evidence adduced in the trial below, when considered in the light most favorable to the plaintiff, as it must be on such motion, is sufficient to carry the case to the jury, and we so hold. This assignment of error is, therefore, overruled.

In our Right to Work statute, enacted by Chapter 328, Session Laws of 1947, now codified as G.S. 95-78 through 95-84, it was "declared to be the public policy of North Carolina that the right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization or association." (G.S. 95-78.) See also *In re Publishing Co.*, 231 N.C. 395, 57 S.E. 2d 366.

The plaintiff is relying upon the following provisions of our Right to Work statute as the basis for his right to recover in this action. "G.S. 95-81. Nonmembership as condition of employment prohibited.—No person shall be required by any employer to abstain or refrain from membership in any labor union or labor organization as a condition of employment or continuation of employment.

"G.S. 95-83. Recovery of damages by persons denied employment.—Any person who may be denied employment or be deprived of continuation of his employment in violation of G.S. 95-80, 95-81 and 95-82 or of one or more of such sections, shall be entitled to recover from such employer and from any other person, firm, corporation, or association acting in concert with

him by appropriate action in the courts of this State such damages as he may have sustained by reason of such denial or deprivation of employment."

The defendants' assignment of error No. 4 is to the following portion of the court's charge to the jury: "Now, if you find * * * by the greater weight of the evidence that on the night of January 17th that this plaintiff, with nine other employees of the defendant company, met at the plaintiff's home and discussed joining a union, and the members there, those ten men, voted to become members and notified Mr. Jones, and you find * * * that the defendant knew that the plaintiff had met with the other members in his employment for the purpose of joining some union, and you find by the greater weight of the evidence that that was the reason, and the sole reason, or one of the reasons why he was discharged by the defendant company and the individual defendant, Mr. Huffman, and you find those facts and all of them by the greater weight of the evidence, then * * * you'd answer this issue yes."

In other portions of the charge the court likewise instructed the jury to answer the first issue in favor of the plaintiff if it found that the sole reason or one of the reasons for plaintiff's discharge was because he did not abstain or refrain from becoming a member of the union or some labor organization. The defendants excepted to each one of these instructions and assign them as error.

These assignments of error present for determination this question: Is it sufficient to sustain a verdict in favor of a plaintiff in an action based on the alleged violation of the provisions of G.S. 95-81, if the jury should find that the discharge for such violation was only one of the reasons for such discharge?

This identical question has not been presented heretofore to this Court for determination under the provisions of our Right to Work statute. However, the federal act, involving the same principle in respect to proof, has been interpreted. The federal statute in pertinent part reads as follows: "It shall be an unfair labor practice for an employer * * * by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: * * *" 29 U.S.C.A., Section 158 (a) (3).

In *Rubin Bros. Footwear v. National Labor Relations Bd.,* 203 F. 2d 486 (C.C.A. 5th), the Court said: "If anything is settled in labor law and under the act, we think it is that membership in a union does not guarantee the member against a discharge as such. It affords protection against discharge only where it is established that the discharge is because of union activity."

In the case of *Stonewall Cotton Mills v. National Labor Relations Bd.*, 129 F. 2d 629 (C.C.A. 5th), the Court said: "* * * the invoked section (29 U.S.C.A., Section 158 (a) (3)) does not, of course, mean that membership or office in a union is a guarantee against discharge, layoff, or demotion. An employee though he belong to or is an officer of a union, may, like any other employee, be discharged for any reason or for no reason at all, unless it is for a reason prohibited by the Act." This view is sustained by many authorities, among which we cite: *Associated Press v. National Labor Relations Bd.*, 301 U.S. 103, 81 L.Ed. 953; *National Labor Relations Bd. v. Jones & L. Steel Corp.*, 301 U.S. 1, 81 L.Ed. 893; *National Labor Relations Bd. v. Electric City Dyeing Co.*, 178 F. 2d 890 (C.C.A. 3rd); 31 Am. Jur., Labor, Section 149, page 895. See also Anno: 123 A.L.R. 619; 306 U.S. 346, 83 L.Ed. 691.

We are bound to recognize that in many instances an employee may be discharged for one, or two or more reasons. Consequently, based on the evidence adduced in the trial below, in order for the plaintiff to recover for damages allegedly sustained as a result of his discharge in violation of the provisions of G.S. 95-81, the burden is on him to show by competent evidence, and by the greater weight thereof, that he was discharged solely by reason of his participation in the discussions with his fellow employees in connection with their proposed plan to join a labor union or that such participation therein was the "motivating" or "moving cause" for his discharge.

Webster's New International Dictionary, 2d Edition gives the following definition of "moving cause": "that which acts as the immediate agency for the production of effect * * *"

In *National Labor Relations Bd. v. Whitin Machine Works*, 204 F. 2d 883 (C.C.A. 1st), the Court said: "In order to supply a basis for inferring discrimination, it is necessary to show that one reason for the discharge is that the employee was engaging in protected activity. It need not be the only reason but it is sufficient if it is a substantial or motivating reason, despite the fact that other reasons may exist," citing *National Labor Relations Bd. v. Electric City Dyeing Co., supra.*

In the case of *Wells, Inc. v. National Labor Relations Bd.*, 162 F. 2d 457 (C.C.A. 9th), it is said: "Nor, under the special facts of the case, is a motive for the discharge irrelevant, as Wells alternatively asserts. The prohibition of Section 8 (3) by its plain terms, extends to any discriminatory discharge, the purpose and manifest effect of which is to discourage employee membership of a labor organization. The existence of some justifiable ground for discharge is no defense if it was not the moving cause."

In *National Labor Relations Bd. v. McGahey,* 233 F. 2d 406 (C.C.A. 5th), the Court said: "Management can discharge for good cause, or bad cause, or no cause at all. It has, as the master of its own business affairs, complete freedom with but one specific, definite qualification: it may not discharge when the real motivating purpose is to do that which Section (8) (a) (3) forbids."

In light of the above authorities, in our opinion, where there is a conflict in the evidence as to the reason for discharge, in an action brought under the provisions of our Right to Work statute, in order for a plaintiff to recover damages thereunder, the jury must find that the discharge resulted solely from the plaintiff's exercise of rights protected under the Act, or that the plaintiff's exercise of such rights was the motivating or moving cause for such discharge, and we so hold.

The assignments of error based on exceptions to portions of the charge, as pointed out herein, are sustained. Therefore, the defendants are entitled to a new trial, and it is so ordered.

The defendants filed a motion in this Court for alternative relief to that sought on their appeal, to wit: That this cause be remanded to the Superior Court of Guilford County to determine whether or not the State courts have jurisdiction of the cause. The defendants contend that the doctrine of federal pre-emption is applicable to the facts in this case. In view of the disposition made of this appeal, we deem it unnecessary to rule on this motion, since the defendants will have an opportunity to raise the question posed in the trial court.

New Trial.