KENNETH DOCKERY v. LAMPART TABLE COMPANY AND U. S. FUR-
NITURE INDUSTRIES

No. 7718SC500

(Filed 16 May 1978)

1. **Master and Servant § 10.2— pursuit of workmen's compensation
   remedies—retaliatory discharge—failure to state claim for relief**

   Plaintiff's allegation that his employer fired him in retaliation for his pur-
   suit of remedies under the N. C. Workmen's Compensation Act failed to state
   a claim upon which relief could be granted since the allowance of such a claim
   would violate the long-standing rule that employment contracts of indefinite
   duration may be terminated with or without cause at the will of either party
   and would constitute judicial legislation.

2. **Master and Servant §§ 10.2, 47— pursuit of workmen's compensation remedies
   —retaliatory discharge—no "device" relieving employer of compensation
   obligations**

   Alleged discharge of an employee in retaliation for his pursuit of remedies
   under the N. C. Workmen's Compensation Act would not constitute a "device"
   to relieve the employer of obligations under the Act within the meaning of
   G.S. 97-6.

APPEAL by plaintiff from *Collier, Judge.* Judgment entered
18 May 1977 in Superior Court, GUILFORD County. Heard in the
Court of Appeals 10 March 1978.

The plaintiff filed a complaint alleging that he was formerly
employed by defendant Lampart Table Co., a wholly owned sub-
sidiary of defendant U. S. Furniture Industries, and that he was
fired from his job in retaliation for his pursuit of remedies made
available to him by the North Carolina Workmen's Compensation
Act after receiving injuries on the job. Defendants moved to
dismiss the complaint for failure to state a claim upon which
relief could be granted. From the order of the trial court granting
the defendants' motion to dismiss, the plaintiff appeals.

Other pertinent facts are hereinafter set forth.

*Morgan, Byerly, Post, Herring & Keziah, by Charles L.
Cromer, for plaintiff appellant.*

*Schoch, Schoch and Schoch, by Arch Schoch, Jr., for defend-
ant appellees.*

MITCHELL, Judge.

[1]  The sole question before us is whether the plaintiff's complaint sets forth a claim upon which relief can be granted and was, therefore, improperly dismissed. As the defendant made the motion to dismiss pursuant to G.S. 1A-1, Rule 12(b)(6), for failure to state a claim upon which relief can be granted, the allegations of the complaint must be taken as true for purposes of this appeal. *Smith v. Ford Motor Co.*, 289 N.C. 71, 80, 221 S.E. 2d 282, 288, 79 A.L.R. 3d 651, 662 (1976); *Mazzucco v. Board of Medical Examiners*, 31 N.C. App. 47, 50, 228 S.E. 2d 529, 532, *appeal dismissed*, 291 N.C. 323, 230 S.E. 2d 676 (1976). This is the proper method of testing the legal sufficiency of the complaint. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). We point out, however, that we express no opinion as to whether the allegations could be supported in fact.

The plaintiff's complaint made the following allegations:

The plaintiff was employed by Lampart Table Company [hereinafter "Lampart"] during February 1976. On 18 September 1976 a load of tables fell on him, while he was engaged in his work, injuring his neck and back. He was treated for his injury at High Point Memorial Hospital and, at defendants' insistence, by Dr. H. Bryan Noah.

Pursuant to the North Carolina Workmen's Compensation Act, G.S., Chapter 97, plaintiff notified defendant Lampart of the injury and his claim was processed through Lampart's workmen's compensation insurance carrier who paid the plaintiff $621.60 temporary total disability benefits and $164.75 for medical expenses for the calendar period 18 September 1976 to 29 November 1976.

On or about 23 November 1976, Dr. H. Bryan Noah certified that the plaintiff could return to work by 27 November 1976. Plaintiff returned to work then, although still suffering severe pain. He was fired by defendant Lampart on 6 December 1976 without a reason being given, and has been unable to find other employment since that time. Throughout the period of plaintiff's injury he was hesitant to file a claim for workmen's compensation benefits and hesitant to have an attorney represent him in the matter, for fear of losing his job. For the same reason, he was forced to put himself in the care of a physician of defendant's choice.

The plaintiff was fired from his job in retaliation for pursuit of his remedies under the North Carolina Workmen's Compensation Act, G.S., Chapter 97. This action was an attempt by the defendants to create a deleterious effect on the plaintiff's exercise of his statutory rights. Further it was an attempt by the defendants to create a device to relieve them from their obligations under the Act. These actions were wrongful, willful, and have injured the plaintiff's reputation and earning capacity.

The plaintiff's complaint alleges a tort theory heretofore unrecognized in this State, that of "retaliatory discharge." In his brief he has referred us to decisions by courts of other jurisdictions which recognize this tort. *See generally*, Annot., 63 A.L.R. 3d 979 (1975).

In *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E. 2d 425, 63 A.L.R. 3d 973 (1973), the Supreme Court of Indiana reversed the dismissal of a similar claim. There it was held that the plaintiff's allegation, that his employer fired him in retaliation for pursuit of his Indiana workmen's compensation rights, stated a claim upon which relief could be granted. The Indiana court held "retaliatory discharge" to be an exception to the contract rule allowing termination, without cause, of employment contracts for an indefinite duration, by either party thereto. Although no authority was cited to support this novel proposition, the Indiana court observed that there was a parallel development in landlord-tenant law. Some states have recognized "retaliatory eviction" as an affirmative defense in actions by landlords for possession of the rented premises. *Edwards v. Habib*, 130 U.S. App. D.C. 126, 397 F. 2d 687 (1968); *Schweiger v. Superior Court*, 3 Cal. 3d 507, 90 Cal. Rptr. 729, 476 P. 2d 97 (1970); *Portnoy v. Hill*, 57 Misc. 2d 1097, 294 N.Y.S. 2d 278 (1968); *Dickhut v. Norton*, 45 Wis. 2d 389, 173 N.W. 2d 297 (1970); *Wilkins v. Tebbetts*, 216 So. 2d 477 (Fla. App. 1968). The court in *Frampton* further observed that one state had held a landlord's "retaliatory eviction" to be a sufficient basis for an affirmative cause of action. *Aweeka v. Bonds*, 20 Cal. App. 3d 278, 97 Cal. Rptr. 650 (1971). For these reasons the Indiana court held "retaliatory discharge" to be a "device" within the meaning of the Indiana Workmen's Compensation Act and actionable.

The section of the Indiana Workmen's Compensation Act proscribing the use of "devices" to defeat the purpose of the Act is

similar to our own G.S. 97-6 which prohibits the use of a "device" to relieve an employer of any of the obligations of Article 1 of our Act. G.S., Chapter 97. However our courts have expressly rejected the use of "retaliatory eviction" by a tenant as an affirmative defense in an action by a landlord for possession. *Evans v. Rose*, 12 N.C. App. 165, 182 S.E. 2d 591, *cert. denied*, 279 N.C. 511, 183 S.E. 2d 686; 8 Strong, N.C. Index 3d, Landord and Tenant, § 17.1, p. 262. Therefore, the reasoning of the Indiana court in *Frampton* is not applicable in this State. We deem this claim based upon "retaliatory discharge" not a claim upon which relief can be granted.

The Texas Court of Civil Appeals recently affirmed the judgment on a verdict in favor of the plaintiff who was allegedly fired in retaliation for instituting a proceeding under the Texas Workmen's Compensation Act. *Texas Steel Co. v. Douglas*, 533 S.W. 2d 111 (1976). The Texas Workmen's Compensation Act, however, contains provisions that specifically create a cause of action in tort based upon this theory, and upon which the claim was grounded. North Carolina has no similar statutory provision in its Workmen's Compensation Act. G.S., Chapter 97. Additionally, our courts have rejected the landlord-tenant rule from which the Indiana court drew its analogy in *Frampton.*

Other states have considered complaints alleging "retaliatory discharge" and have found them not to present claims upon which relief could be granted. The Supreme Court of South Carolina in *Raley v. Darling Shop of Greenville, Inc.*, 216 S.C. 536, 59 S.E. 2d 148 (1950), held that the actions of an employer who threatened to discharge, and in fact discharged, an employee who refused to withdraw her South Carolina workmen's compensation claim were reprehensible but not actionable. In *Raley* the court found that the employee proceeded with the claim, was compensated and, therefore, was not denied her statutory rights. Similarly, the plaintiff in the case *sub judice* received his benefits pursuant to the statute and was not denied his workmen's compensation rights.

In *Christy v. Petrus*, 365 Mo. 1187, 295 S.W. 2d 122 (1956), the Supreme Court of Missouri denied a claim in tort under similar facts. The court observed that it could "hardly conceive of the legislature making such careful provision for the rights and

---

---

compensation of injured employees covered by the Act and yet omitting a specific provision for recovery of damages for wrongful discharge if there had been any intent to create such a right." 365 Mo. at 1193, 295 S.W. 2d at 126.

We think the reasoning of the Missouri court in *Christy* concerning the intent of the legislature is applicable here. If the General Assembly of North Carolina had intended a cause of action be created, surely, in a workmen's compensation statute as comprehensive as ours, it would have specifically addressed the problem.

In *Stephens v. Justiss-Mears Oil Company*, 300 So. 2d 510 (La. Ct. of App. 1974), the court upheld a lower court's dismissal of a suit based upon the "retaliatory discharge" theory. There an employer allegedly discharged the plaintiff for filing a workmen's compensation claim. In affirming the dismissal, the court cited and applied the contract rule recognized in *Frampton* that, under ordinary circumstances, an employer may hire and fire his employees at will.

We think that to allow recovery in tort upon a theory of "retaliatory discharge" on the facts of this case would be ill-advised for several reasons. First, it would do injury to the well-established common-law rule of contract allowing employers and employees to terminate their relationship at the will of either party when the employment is for an indefinite duration.

The plaintiff concedes that the general rule in this and other jurisdictions is that, where a contract of employment does not fix a definite term, the employment is terminable with or without cause at the will of either party. *Bishop v. Wood*, 426 U.S. 341, 48 L.Ed. 2d 684, 96 S.Ct. 2074 (1976); *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E. 2d 282, 79 A.L.R. 3d 651 (1975); *Tuttle v. Kernersville Lumber Co.*, 263 N.C. 216, 139 S.E. 2d 249 (1964); *Howell v. Commercial Credit Corp.*, 238 N.C. 442, 78 S.E. 2d 146 (1953); *Malever v. Kay Jewelry Co.*, 223 N.C. 148, 25 S.E. 2d 436 (1943). However, the plaintiff here has attempted to allege a tort. He argues that a holding that he has stated a claim for which relief can be granted in tort would not violate the established contract rule. We do not agree.

An employment contract for an indefinite period would not be terminable at the will of either party thereto with or without cause if an employer could be held liable in tort for a termination of the contract. The plaintiff in this case, as in *Raley v. Darling Shop of Greenville, Inc.*, 216 S.C. 536, 59 S.E. 2d 148 (1950), alleged no breach of contract, had no right to continued employment and has no claim upon which relief can be granted due to termination for whatever reason, unless such right exists by statute. *Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E. 2d 282 (1975); *Still v. Lance*, 279 N.C. 254, 182 S.E. 2d 403 (1971); *Willard v. Huffman*, 247 N.C. 523, 101 S.E. 2d 373 (1958); 8 Strong, N.C. Index 3d, Master and Servant, § 10, p. 490. We further point out that the plaintiff in the case at bar, as was the case with the plaintiff in *Raley*, received benefits under the statute and therefore has had compensation for injuries received on the job.

Additionally, the plaintiff suggests that we infer by innuendo from the language in *Still v. Lance*, 279 N.C. at 264, 182 S.E. 2d at 409, an exception to the rule allowing free termination of employment. He contends that the same reasoning applies, where one is fired in retaliation for pursuit of a statutory or constitutional right, as applies when a statute specifically protects an employee from discharge for engaging in certain activities. We reject this multifaceted contention. The plaintiff pursued his rights under the statute and was compensated thereby. As violations of constitutional rights were not alleged and argued below, we are not required to consider them upon appeal. *Grissom v. Dept. of Revenue*, 34 N.C. App. 381 S.E. 2d (1977). *See generally*, 1 Strong, N.C. Index 3d, Appeal and Error, § 3, p. 182. Therefore, we express no opinion as to whether the plaintiff could have sought and obtained relief under any theory other than that he sought to raise by the complaint.

[2]   We think complex problems such as "devices" to defeat provisions of an act of the legislature, are best left to the expertise and resources of that body. The plaintiff contends that denying him relief will have a chilling effect upon employees who attempt to pursue their rights under the North Carolina Workmen's Compensation Act. He argues that this would create a "device" relieving employers from the obligation established by the Act and that such "device" is prohibited by public policy as expressed in G.S. 97-6.

A pattern of activity by employers which discourages or discriminates against employees who claim benefits pursuant to the Workmen's Compensation Act of this State might be found to have a chilling effect on employees' pursuit of those rights. However, we are not here confronted with allegations of fact tending to establish a pattern of such activity.

Remedies for claims resulting from alleged violations of the spirit of the act are best left to the legislature. This was recognized in *Bushwick-Decatur Motors v. Ford Motor Co.*, 116 F. 2d 675, 677 (2d Cir. 1940), in which the court was faced with an allegedly unjustifiable termination of a dealership contract by Ford Motor Company. On an appeal from a decision granting summary judgment in favor of the defendant, Ford Motor Company, the court recognized the imbalance in the bargaining power between Ford Motor Company and the dealer. Confronted with a dealership agreement drafted by Ford that was without stated duration, except for the provision making it terminable at the will of either party, the court stated:

> To attempt to redress this balance by judicial action without legislative authority appears to us a doubtful policy. We have not proper facilities to weigh economic factors, nor have we before us a showing of the supposed needs which may lead the manufacturers to require these seemingly harsh bargains.

116 F. 2d at 677.

Left to their own devices in the wake of opinions such as those in *Bushwick-Decatur Motors*, the General Assembly of North Carolina addressed the social and economic issues presented by the relationships between automobile manufacturers and dealers and enacted legislation providing a comprehensive set of rights and remedies for both parties. We believe the General Assembly is equally well equipped to weigh the various social and economic factors presented by the plaintiff's allegations in this case and to take appropriate action promoting the public welfare.

Another example of the willingness of our General Assembly to deal with such complex social and economic problems is to be found in G.S. 95-83 providing for recovery of damages in tort by an employee who is terminated for union activities or for failing

to engage in union activities. G.S. 95-83; *Willard v. Huffman*, 247 N.C. 523, 101 S.E. 2d 373 (1958). Our General Assembly having made such affirmative showings of its ability to deal with problems similar to those sought to be raised by the plaintiff, we are entirely unwilling to preempt the legislative function in this case. We are, therefore, forced to conclude that the failure of the General Assembly to specifically provide the claim for relief alleged by the plaintiff was an indication of its intent that no such claim be created.

For the reasons previously set forth, we feel the claim for relief alleged by the plaintiff, if allowed, would do violence to the long-standing rule governing employment contracts for an indefinite period and would constitute judicial legislation. We deem both such consequences undesirable.

We hold that the facts alleged by the plaintiff, although they pose valid public policy questions for the legislature, do not state a claim upon which relief can be granted. The judgment of the trial court appealed from is

Affirmed.

Chief Judge BROCK and Judge HEDRICK concur.