**Cynthia K. LEACH, Plaintiff,**

v.

**NORTHERN TELECOM, INC., Defendant.**

**No. 90–731–CIV–5–BR.**

United States District Court, E.D. North Carolina, Raleigh Division.

Sept. 9, 1991.

Robert J. Willis, Avery & Jones, Raleigh, N.C., for plaintiff.

Gretchen W. Ewalt, Frank P. Ward, Jr., Maupin Taylor Ellis & Adams, Raleigh, N.C., for defendant.

## ORDER

BRITT, District Judge.

This matter is before the court on plaintiff's motions to strike an affirmative de-

fense and to strike an offer of judgment pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and on both parties' motions for sanctions related to these Rule 12(f) motions. The parties have fully briefed these motions and they are now ripe for ruling.

## I. *Facts*

On 11 December 1990, plaintiff filed a two-count complaint alleging that she was discriminated against on the basis of her sex and in retaliation for protected expression, 42 U.S.C. §§ 2000e–2(a)(1) & 2000e–3(a), and wrongfully discharged in violation of North Carolina common law. Her complaint alleges the following: Plaintiff was a manager at Northern Telecom when she complained to her immediate supervisor, Scott McKinney, that several of the employees she supervised were experiencing health problems due to being overworked by the company. She requested additional help, but Mr. McKinney rejected her request. In accordance with defendant's "open-door" policy, plaintiff then met with Mr. McKinney's immediate supervisors to discuss her concerns. As a result, her relationship with Mr. McKinney began to deteriorate. Mr. McKinney ultimately issued three warnings citing plaintiff for insubordination.

Plaintiff eventually accused Mr. McKinney of sex discrimination with respect to his decisions on salary level, work load, and expected productivity for male and female managers under his direct supervision. Defendant conducted an internal investigation of these accusations and found them to be unsubstantiated. On or about the same day defendant came to this conclusion, plaintiff was removed from her position as a manager and placed on a special assignment which was to last sixty days. She was informed that if she was unable to acquire another position within the company in sixty days, she would be terminated. Plaintiff's attempts to find comparable work within the sixty-day period were unsuccessful and she was therefore discharged.

## II. *Discussion*

### A. *Affirmative Defense*

Defendant's third affirmative defense states:

> Pursuant to Rule 12(b)(6), F.R.Civ.P., Defendant moves to dismiss those of plaintiff's claims allegedly based on wrongful discharge, because in North Carolina an action for wrongful discharge is limited to those situations involving a discharge based on an employee's refusal to follow her employer's instructions to violate the law. Plaintiff's allegations of sex discrimination and retaliatory discharge, should such be proven, do not involve an instruction to plaintiff by defendant to violate the law.

Plaintiff

> submits that under applicable case authority, defendant Telecom's Third Affirmative Defense, as amended, should be rejected as a matter of law as "insufficient" within the meaning of Rule 12(f) because she has stated a cause of action for the tort of wrongful discharge in violation of the public policy which is codified in ... North Carolina and federal law[.]

In their briefing, both plaintiff and defendant have thoroughly addressed and analyzed the merits of plaintiff's wrongful discharge claim. Therefore, the court has decided to activate defendant's motion to dismiss and consider it now. That motion should be granted if plaintiff's wrongful discharge claim fails to state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6). For the purpose of analyzing this motion, plaintiff's allegations will be deemed to be accurate. *See Miree v. De Kalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

#### 1. *North Carolina Wrongful Discharge Law*

The North Carolina courts have long adhered to the rule that an employee can be discharged at any time and for any reason at the will of the employer, absent a contract for a definite term. *See, e.g., Dockery v. Lampart Table Co.*, 36 N.C.App. 293, 244 S.E.2d 272, *disc. rev. denied*, 295

N.C. 465, 246 S.E.2d 215 (1978) (at-will employee does not have cognizable claim for discharge in retaliation for filing worker's compensation claim). However, since 1985 the North Carolina courts have recognized that the employment-at-will doctrine contains at least one important exception: discharge in violation of public policy. Because a complete understanding of the contours of this exception is critical to resolution of defendant's motion to dismiss, the court will briefly discuss some of the cases in which this exception has been at issue.

In *Sides v. Duke University*, 74 N.C.App. 331, 328 S.E.2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985), plaintiff, a nurse anesthetist, alleged that she refused defendant doctor's request to administer what she considered a dangerous dose of anesthesia to a patient. *Id.* at 333, 328 S.E.2d at 821. The doctor then personally administered the anesthesia and the patient went into cardiac arrest and suffered permanent brain damage. He sued the doctor and hospital. Before plaintiff was deposed, several physicians who worked at the hospital and hospital attorneys advised her not to tell all she knew about what happened and that she would " 'be in trouble' " if she did. *Id.* Rejecting this advice, plaintiff testified truthfully at both the deposition and trial. The jury returned a $1.75 million verdict for the patient. *Id.* Three months later, plaintiff was discharged effective immediately. *Id.* at 334, 328 S.E.2d at 822.

The North Carolina Court of Appeals distinguished *Dockery* by noting that the offenses plaintiff was allegedly asked to commit in exchange for preserving her job were "an affront to the integrity of our judicial system, an impediment to the constitutional mandate of the courts to administer justice fairly, and a violation of the right that all litigants in this State have to have their cases tried upon honest evidence fully given." *Id.* at 338, 328 S.E.2d at 824. The court stated that "while there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy."

*Id.* at 342, 328 S.E.2d at 826. The court held that discharging an employee for refusing to testify untruthfully or incompletely in a court case would contravene public policy. *Id.* It therefore reversed the dismissal of plaintiff's wrongful discharge claim. *Id.* at 349, 328 S.E.2d at 830.

In *Williams v. Hillhaven Corp.*, 91 N.C.App. 35, 370 S.E.2d 423 (1988), plaintiff was a nurse-supervisor at defendant's nursing home. She testified under subpoena at the unemployment compensation hearing of a coemployee, who was ultimately awarded benefits. *Id.* at 36, 370 S.E.2d at 424. The nursing home administrator was thereafter very hostile to plaintiff and accused her of an improper admission for which she had no responsibility. *Id.* at 36–37, 370 S.E.2d at 424. Six weeks after the hearing, plaintiff was fired purportedly for leaving medication at a patient's bedside. *Id.* at 37, 370 S.E.2d at 424. Plaintiff sued for wrongful discharge and the trial court dismissed the action. The court of appeals noted that *Sides* "created an exception to the general rule that an employee at will has no tort claim for retaliatory discharge[.]" *Id.* at 39, 370 S.E.2d at 425. It found the facts plaintiff alleged in her complaint to fall within the exception:

> [T]aking the allegations in the complaint to be true as required by Rule 12(b)(6), the defendants in our opinion have violated the rationale of *Sides*. Although defendants did nothing to plaintiff before her testimony, they allegedly harassed and fired her after the fact because of her testimony. In effect, according to the complaint, they fired her for not committing perjury (as the plaintiff in *Sides* was told to do), even though they did not encourage her to do so. In *Sides* and the case *sub judice*, the plaintiff, according to the complaint, was discharged from her employment for telling the truth. Thus, the plaintiff falls into the same narrow exception to the general rule (that an employee at will has no tort claim for retaliatory discharge) that *Sides* created.

*Id.* at 39, 370 S.E.2d at 425. The court found it significant that the state legislature had recently enacted a statute which provided a remedy for employees discharged in retaliation for testifying at unemployment compensation hearings. *Id.* at 41, 370 S.E.2d at 426. Although it was not effective at the time plaintiff was discharged, it nevertheless expressed the state's public policy that plaintiff's employer had violated. *Id.*

The North Carolina Supreme Court first considered the public policy exception in *Coman v. Thomas Manufacturing Co.,* 325 N.C. 172, 381 S.E.2d 445 (1989). There plaintiff-truckdriver alleged that his employer required him to falsify his logs so as to show the company's compliance with federal regulations. *Id.* at 173, 381 S.E.2d at 446. He was also instructed that he would have to continue driving for periods of time which violated the regulations if he wanted to maintain his employment. When he refused, he was informed that his pay would be cut in half. *Id.* at 173–74, 381 S.E.2d at 446. The supreme court held that these facts came "within the reasoning of *Sides* and that the complaint state[d] a cause of action for wrongful discharge. Certainly perjury and subornation of perjury differ from operating a truck in violation of federal law and falsifying federal records. However, both offend the public policy of North Carolina." *Id.* at 175, 381 S.E.2d at 447. The court noted that the North Carolina Administrative Code incorporated the federal regulations and that a North Carolina statute provided for criminal penalties for seeking to evade or defeat such regulations. *Id.* at 176, 381 S.E.2d at 447. The court also observed that the

> legislature has enacted numerous statutes regulating almost every aspect of transportation and travel on the highways in an effort to promote safety. The actions of defendant, as alleged, impair and violate this public policy. Plaintiff allegedly was faced with the dilemma of violating that public policy and risking imprisonment, N.C.G.S. § 20–397, or complying with the public policy and being fired from his employment. Where the public policy providing for the safety

> of the traveling public is involved, we find it is in the best interest of the state on behalf of its citizens to encourage employees to refrain from violating that public policy at the demand of their employers. Providing employees with a remedy should they be discharged for refusing to violate this public policy supplies that encouragement.

*Id.* at 176, 381 S.E.2d at 447–48.

The court did not stop there:

> This Court has never held that an employee at will could be discharged in bad faith. To the contrary, in *Haskins v. Royster,* 70 N.C. 601 (1874), this Court recognized the principle that a master could not discharge his servant in bad faith. Thereafter, this Court stated the issue to be whether an agreement to give the plaintiff a regular permanent job was anything more than an indefinite general hiring terminable in *good faith* at the will of either party.

> Numerous courts have recognized wrongful discharge theories characterized either as the *bad faith exception* to the at-will doctrine or under the *implied covenant of good faith and fair dealing.* Bad faith conduct should not be tolerated in employment relations, just as it is not accepted in other commercial relationships.

*Id.* at 176–77, 381 S.E.2d at 448 (citations and footnote omitted) (emphasis in original). The court reversed the dismissal of plaintiff's wrongful discharge claim. *Id.* at 178, 381 S.E.2d at 449.

In *McLaughlin v. Barclays American Corp.,* 95 N.C.App. 301, 382 S.E.2d 836, *cert. denied,* 325 N.C. 546, 385 S.E.2d 498 (1989), plaintiff was the manager of defendant's branch office when he attempted to counsel a subordinate employee about his work performance. Plaintiff alleged that an argument erupted and he attempted to exit the room. *Id.* at 303, 382 S.E.2d at 838. As he neared the door the subordinate punched him in the chest. Plaintiff then threw up his right hand in self defense and in doing so struck the subordinate on the side of the face. Five days later, plaintiff's employment was terminat-

ed without explanation or investigation. Plaintiff sued, alleging that "his discharge for acting in his own defense violate[d] public policy." *Id.* at 304, 382 S.E.2d at 838–39. The court of appeals rejected this claim:

> The two North Carolina cases which have used public-policy grounds to find exceptions to the at-will doctrine have involved allegations of the employee's being affirmatively instructed to violate the law. In each case, our courts focused on the potential harm to the public at large if those instructions were obeyed. Similar public-policy implications are not present [here]. We do not perceive the kind of deleterious consequences for the general public, if we uphold [defendant's] action, as might have resulted from decisions favorable to the employers in *Sides* and *Coman*.

*Id.* at 306, 382 S.E.2d at 840.

The court also approached the case from a slightly different angle:

> Along with the compelling public-policy concerns in [*Sides* and *Coman*], the holdings in [those cases] are consistent with the principle that our courts do not give their imprimatur to employers who discharge employees in bad faith. In this case, there is no evidence of bad faith to justify invoking an exception to the at-will doctrine.

*Id.* at 306, 382 S.E.2d at 840 (citations omitted). The court made this finding despite plaintiff's employer's "virtual indifference" to his requests for help regarding the subordinate employee, its "shallow and perfunctory" investigation, and "irrational" dismissal of plaintiff. *Id.*

> *Sides*, in language quoted with approval by our Supreme Court, noted the employer's right to terminate an at-will contract for "no reason, or for an arbitrary or irrational reason." The conduct of defendants in this case, in its worst light indifferent and illogical, does not demonstrate the kind of bad faith that prompted our courts to recognize causes of action in *Sides* and *Coman*.

*Id.* at 306–07, 382 S.E.2d at 840 (quoting *Sides*, 74 N.C.App. at 342, 328 S.E.2d at 826) (citation omitted).

The most recent state court decision addressing a wrongful discharge claim was *Amos v. Oakdale Knitting Co.*, 102 N.C.App. 782, 403 S.E.2d 565 (1991). Plaintiffs were employed by a knitting company. After completing one of their workweeks, they learned that their pay had been reduced to $2.18 per hour, substantially below the state minimum wage of $3.35 per hour. *Id.* at 783, 403 S.E.2d at 566. They alleged that they were told they would have to work at that rate or face termination. They refused and were terminated. The court of appeals, quoting North Carolina statutory law, observed that "[w]ithout question, payment of the minimum wage is the public policy of North Carolina." *Id.* at 785, 403 S.E.2d at 567. The court noted, however, that the legislature had expressly provided remedies for violations of the minimum wage laws and for retaliation against employees for asserting their rights under those laws. *Id.* The court

> decline[d] to extend the public policy exception to the employment at will doctrine to afford a cause of action in addition to that provided by statute. Relegating an employee to his statutory remedy is, in our view, a sound policy where, as here, the employee has not been required to engage in unlawful conduct and the employer's statutory violation does not threaten the public safety.

*Id.* at 786, 403 S.E.2d at 568. The court offered the following reformulation of the public policy exception: " '[A]pplication of the public policy exception requires two factors: (1) that the discharge violate some well-established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society.' " *Id.* at 787, 403 S.E.2d at 568 (quoting *Wehr v. Burroughs Corp.*, 438 F.Supp. 1052, 1055 (E.D.Pa.1977), *aff'd as modified*, 619 F.2d 276 (3d Cir.1980)).

■ Thus, as North Carolina law now stands, when an employee has not been required to engage in unlawful conduct,

and when her employer's statutory violation does not threaten public safety, she states a claim for wrongful discharge in violation of public policy only when her discharge violates some well-established public policy *and* she has no otherwise available remedy. *Amos,* 102 N.C.App. at 786–87, 403 S.E.2d at 568.[1]

### 2. Plaintiff's Wrongful Discharge Claim

■ Plaintiff's second claim for relief alleges that defendant wrongfully discharged her in violation of the public policy set forth in North Carolina General Statute section 143–422.2:

It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C.Gen.Stat. § 143–422.2. She alleges that defendant violated this public policy insofar as it terminated her because of her "opposition to what she believed in good faith to be a number of sexually discriminatory employment practices by Telecom."

This allegation does not implicate the public policy concerns expressed in section 143–422.2. The public policy expressed there relates to employment discrimination on account of race, color, sex, etc. The statute does not express a public policy concerning retaliation for opposition to discriminatory practices. Although Title VII of the Civil Rights Act of 1964 does protect an employee from termination for such expression, *see* 42 U.S.C. § 2000e–3(a), plaintiff did not refer to Title VII as a public policy violated by defendant's alleged actions. Even if she had, the court would reject such allegation because no North Carolina case has ever held that a wrongful discharge claim can be grounded on a violation of federal public policy. *See Coman,* 325 N.C. at 178, 381 S.E.2d at 449.

Plaintiff has also failed to meet the second prong of the *Amos* test because 1) she was not required to engage in unlawful conduct, 2) her employer's alleged statutory violation does not threaten public safety, and 3) she has an available remedy to redress what she contends was a termination in violation of public policy: Title VII. *See Amos,* 102 N.C.App. at 786–87, 403 S.E.2d at 568. Indeed, Judge Franklin T. Dupree, Jr. of this district came to this same conclusion in a case whose facts were nearly identical to those here. *See Percell v. International Business Machines, Inc.,* 765 F.Supp. 297, 302 (E.D.N.C.1991). Although plaintiff in *Coman* was permitted to pursue a wrongful discharge claim in state court despite the potential availability of a federal remedy, the state supreme court held that the state constitution required that he be permitted to obtain relief in state court. 325 N.C. at 174, 381 S.E.2d at 446. Here, plaintiff has been afforded a state court forum through the state's exercise of concurrent jurisdiction with the federal courts over Title VII claims. *See Yellow Freight System, Inc. v. Donnelly,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).

The court is aware that Judge Eugene Gordon in *Iturbe v. Wandel & Goltermann Technologies, Inc.,* 774 F.Supp. 959

---

1. The United States Court of Appeals for the Fourth Circuit has spoken twice on this issue. However, both opinions were soon followed by North Carolina court decisions which radically altered existing law. In *Guy v. Travenol Laboratories, Inc.,* 812 F.2d 911, 915 (4th Cir.1987), the court held that "*Sides* was intended to be a limited perjury exception." There can be little doubt after *Williams* and *Coman* that *Guy* is no longer good law. In *Harrison v. Edison Brothers Apparel Stores, Inc.,* 924 F.2d 530 (4th Cir. 1991), the court rejected the following formulation of the public policy exception which the district court had relied on in granting defendant's summary judgment motion: " '[A]pplication of the "bad faith" public policy exception to the at-will rule enunciated by *Coman* requires two factors: (1) that the discharge violated some well established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society.' " *Id.* at 533 (quoting the district court's decision): "Though we have no objection to the first element of this test, we find no North Carolina authority for the second." *Id. Amos,* decided less than three months after *Harrison,* is precisely such authority. Therefore, *Harrison* is no longer good law either.

(M.D.N.C.1991) held that a plaintiff stated a wrongful discharge claim despite the availability of Title VII in state court. Judge Gordon interpreted *Amos* as follows:

> *Amos* thus clarifies the reach of the public policy exception to the employment at will doctrine created in *Coman*, and a two-part test has been developed: (1) the discharge must violate some well-established public policy, and (2) there must be no *North Carolina* statutory remedy to protect the interest of the aggrieved employee or society.

*Id.* at 962–63 (emphasis added). With all due respect to Judge Gordon, the court finds nothing in *Amos* which limits its second prong to the provision of a *North Carolina* statutory remedy:

> Thus, unlike the plaintiff in *Coman*, plaintiffs in this case have available to them a statutory remedy in the North Carolina court....
>
> Relegating an employee to his statutory remedy is, in our view, a sound policy where, as here, the employee has not been required to engage in unlawful conduct and the employer's statutory violation does not threaten the public safety....
>
> Moreover, limitation of the public policy exception to situations where there is no statutory redress finds support in other jurisdictions....
>
> [T]he public policy exception ha[s] been applied only where the employee ha[s] no other remedy and a valuable social policy would go unvindicated....
>
> "Therefore, application of the public policy exception requires two factors: (1) that the discharge violate some well-established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society."

*Id.* 102 N.C.App. at 785–87, 403 S.E.2d at 567–68 (quoting *Wehr*, 438 F.Supp. at 1055). Title VII provides plaintiff with a statutory remedy for what she contends was a termination in violation of public policy—indeed, she is pursuing that remedy in her first claim for relief. Therefore, under *Amos*, she has not stated a claim for relief under North Carolina common law.

■ Plaintiff has also alleged what she contends is a separate ground for her wrongful discharge claim—bad faith. Since the state supreme court used this phrase in *Coman, see supra* at p. 424, there has been considerable confusion over whether the North Carolina courts will recognize a claim for bad faith discharge which is different—and more expansive— than discharge in violation of public policy. *Compare Percell*, 765 F.Supp. at 302–03; *English v. General Electric Co.*, 765 F.Supp. 293, 295–97 (E.D.N.C.1991) (Judge Dupree finds that no such claim exists) and *Haburjak v. Prudential Bache Securities, Inc.*, 759 F.Supp. 293, 300–01 (W.D.N.C. 1991) (Judge Robert D. Potter finds that no such claim exists) *with Iturbe*, 774 F.Supp. at 963 (Judge Gordon finds that such claim does exist). Whether or not an independent claim for bad faith exists, the court is confident that the facts plaintiff has alleged, taken in the light most favorable to her, would not state such a claim. In *Iturbe*, Judge Gordon limited application of this "bad-faith exception" to situations in which employees are terminated in "in violation of written policy manuals." *Id.* at 964. Plaintiff here has not alleged either that defendant had such a manual or that, if it did, her termination violated one of its provisions.

### B. Offer of Judgment

On 12 April 1991, defendant served plaintiff with an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. That rule provides, in pertinent part:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An

offer not accepted shall be deemed withdrawn and evidence thereof is not admissable except in a proceeding to determine costs. If the judgment obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. Fed.R.Civ.P. 68. On 19 April 1991, plaintiff moved to strike the offer of judgment pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. That rule provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Plaintiff also asks the court to toll the period in which it may accept the offer should it deny the motion to strike.

■ Plaintiff contends that Rule 68 does not apply to Title VII actions. This argument has been considered and rejected by the Fourth Circuit. *Spencer v. General Electric Co.*, 894 F.2d 651, 662–63 (4th Cir.1990).

■ Plaintiff also argues that defendant's offer of judgment is insufficient because it does not include the equitable relief she seeks in her complaint. She fears that if she rejects the offer, and later is awarded monetary relief less than the offer together with equitable relief, she will be required to pay costs. She is mistaken. Rule 68 provides for cost shifting only if the judgment obtained is not "more favorable than the offer[.]" Fed.R.Civ.P. 68. If the monetary relief awarded falls short of that offered, but equitable relief is also awarded, the trial judge can then determine whether the relief awarded, as a package, is more or less favorable than that offered. That decision simply cannot be made until a verdict is obtained. Nothing in Rule 68 requires equitable relief to be included as part as an offer of judgment when the complaint seeks both equitable and monetary relief.

■ Plaintiff's motion to strike the offer of judgment will be denied. Plaintiff alternatively requests that this court toll the period in which she may accept the offer. This request will be denied primarily because this order so significantly changes the posture of the case that it would not be fair to hold defendant to the earlier offer. Under Rule 68, however, defendant is free to restate the offer or make a new offer at any time.

## C. Sanctions

■ Defendant contends that plaintiff's brief in support of her motion to strike defendant's third affirmative defense was signed in violation of Rule 11 of the Federal Rules of Civil Procedure. In a nutshell, that rule "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990) (quoting Fed.R.Civ.P. 11). The rule must be interpreted to give effect to its central goal of deterrence. *Id.*

Defendant's argument is essentially threefold. First, defendant argues that by this motion, plaintiff attempted to relitigate an issue already decided by this court. It contends that Judge J. Rich Leonard's grant of its motion to amend its third affirmative defense, in the face of a futility challenge by plaintiff, was a decision on the merits of the defense. The court disagrees entirely. All Judge Leonard stated in his order was that "[m]otions to amend pleadings are to be liberally allowed. The amendment as propounded is not so clearly futile as to defeat this policy." This was not a decision on the merits. Second, defendant contends plaintiff's argument that her wrongful discharge claim stated a claim for relief was irrelevant to her motion to strike. As is evident from the body of this order, the court disagrees. The motion to strike put the merits of the defense squarely at issue. Finally, defendant asserts that sanctions are proper because plaintiff's memorandum of law is almost identical—indeed, in some instances, precisely identical—to a memorandum she submitted in another, unrelated case. The court finds nothing in Rule 11, or any rule for that matter, which would sanction a

party for making exactly the same argument to two different tribunals. As such, this motion will be denied.

 Defendant has also moved for Rule 11 sanctions regarding plaintiff's motion to strike defendant's offer of judgment. Defendant argues that this motion should be granted because plaintiff's position was "not warranted by existing law." However, every motion which is denied is "not warranted by existing law." That fact alone does not make every motion denied subject to Rule 11 sanctions. Rather, the party moving for sanctions must demonstrate that the other party did not make *reasonable inquiry* into existing law. Even if defendant had made this allegation, the court would reject it. As is evident from the parties' briefing on this motion to strike, Rule 68 has received scant review by the federal courts. In view of this fact, the court finds that plaintiff's motion to strike the offer of judgment, although not legally tenable, does not subject her or her attorney to sanctions.

Plaintiff has moved for sanctions under both Rule 11 and 28 U.S.C. § 1927 alleging that defendant's motions for sanctions are not warranted by existing law or a good faith argument for the alteration of existing law. Again, sanctions are not awarded merely because a motion is denied. In light of the fact that the court accepted both substantive arguments raised by defendant in response to plaintiff's motions, the court can hardly come to the conclusion that defendant's motions for sanctions are themselves sanctionable.

### III. *Conclusion*

For the foregoing reasons, the court rules as follows:

1. Plaintiff's motion to strike defendant's third affirmative defense is DENIED. Moreover, the motion to dismiss contained within that defense is GRANTED and plaintiff's second claim for relief is hereby DISMISSED;

2. Plaintiff's motion to strike defendant's offer of judgment is hereby DENIED. Plaintiff's alternative request to toll the period in which she may accept that offer is also DENIED;

3. Both of defendant's motions for sanctions are hereby DENIED; and

4. Plaintiff's motion for sanctions is hereby DENIED.